UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL ANELLO,<br><br>        Plaintiff,<br><br> -against-<br><br>INTERPRIVATE ACQUISITION CORP., AHMED M. FATTOUH, BRANDON C. BENTLEY, JEFFREY A. HARRIS, PIETRO CINQUEGRANA, and MATTHEW LUCKETT,<br><br>        Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Michael Anello ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action is brought by Plaintiff against InterPrivate Acquisition Corp. ("InterPrivate" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with InterPrivate, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between InterPrivate and Aeva, Inc. ("Aeva"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2. On November 2, 2020, InterPrivate entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which the Proposed Merger will be funded through a

1

combination of (i) the issuance of approximately $120 million of common stock through a fully committed private placement at $10.00 per share, including investments from Adage Capital and Porsche SE, (ii) the issuance of $ 1.7 billion of new common stock of InterPrivate to current stockholders of Aeva subject to customary adjustments and (iii) $243 million of cash held in trust assuming no redemptions by InterPrivate's existing public stockholders (the "Merger Consideration"). The combined company will have an implied pro forma equity value of approximately $2.1 billion at closing, and Aeva's existing stockholders will hold approximately 80% of the issued and outstanding shares of common stock of the combined company immediately following the closing (the "Exchange Ratio").

3.     On December 3, 2020, in order to convince InterPrivate shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading registration statement on Form S-4 with the SEC in violation of Sections 14(a) and 20(a) of the Exchange Act and in breach of the Individual Defendants' duty of disclosure. On January 14, 2021, Defendants filed an amended registration statement which failed to remedy those deficiencies (the "Registration Statement").

4.     In particular, the Registration Statement contains materially incomplete and misleading information concerning: (i) the conflicts of interest facing the financial advisors employed by the Company including, Morgan Stanley & Co. LLC ("Morgan Stanley") and Credit Suisse Securities (USA) LLC ("Credit Suisse"); and (ii) the financial projections and valuations of Aeva.

5.     The special meeting for InterPrivate stockholders to vote will be scheduled in the coming weeks (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Shareholder Vote so Plaintiff

can cast an informed vote and properly exercise his corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and breach of the duty of disclosure. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to InterPrivate's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of disclosure.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in

any federal district court." *Id.* At 1316

10. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because the Company's principal executive office is located in this District at 1350 Avenue of the Americas New York, New York 10019 and Defendants are found or are inhabitants or transact business in this District.

## PARTIES

11. Plaintiff is, and at all relevant times has been, a holder of InterPrivate common stock.

12. Defendant InterPrivate is a blank check company formed in order to effect a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or other similar business combination with one or more businesses or entities. The Company's principal executive office is located at 1350 Avenue of the Americas New York, New York 10019. The Company's common stock trades on the NYSE under the ticker symbol "IPV".

13. Individual Defendant Ahmed M. Fattouh has been the Chief Executive Officer ("CEO") of the Company and Chairman of the Board at all relevant times.

14. Individual Defendant Brandon C. Bentley has been the General Counsel of InterPrivate and has served as a director at all relevant times.

15. Individual Defendant Jeffrey A. Harris has served as director of the Company at all relevant times.

16. Individual Defendant Pietro Cinquegrana has served as director of the Company at all relevant times.

17. Individual Defendant Matthew Luckett has served as director of the Company at all relevant times.

18.     The Individual Defendants referred to in ¶¶ 13-17 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with InterPrivate they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.     Background and the Proposed Merger**

19.     InterPrivate is a blank check company that was incorporated in Delaware on August 16, 2019, formed for the purpose of effecting a merger, share exchange, asset acquisition, stock purchase, reorganization, recapitalization or other similar business combination with one or more businesses.

20.     Aeva was founded in 2017 by Soroush Salehian and Mina Rezk, both of whom are former engineering leaders at Apple & Nikon. Headquartered in Mountain View, California, Aeva is building the next generation of sensing and perception for autonomous vehicles and beyond. Aeva is backed by Adage Capital, Porsche SE, Lux Capital and Canaan Partners, amongst others.

21.     On November 2, 2020, InterPrivate issued a press release announcing the Proposed Merger, which states in relevant part:

> **Aeva, Maker of the First 4D LiDAR on Chip, to Be Listed on NYSE through Business Combination with InterPrivate Acquisition Corp.**
>
> **Mountain View, CA (November 2, 2020)** – InterPrivate Acquisition Corp ("InterPrivate") (NYSE: IPV), a special purpose acquisition company, announced today that it has entered into a definitive agreement for a business combination with Aeva, Inc. ("Aeva"), the first company to provide a perception platform built from the ground up on Silicon Photonics for mass scale application in automotive, consumer electronics and other sectors. Upon closing of the transaction, the combined company will be renamed "Aeva, Inc." and is expected to continue to be listed on the New York Stock Exchange and trade under the ticker symbol "AEVA."
>
> Founded in 2017 by former Apple engineers Soroush Salehian and Mina Rezk and led by a multidisciplinary team of over 100 experienced leaders, engineers, and operators, Aeva is actively engaged with thirty of the top players in automated and

autonomous driving across passenger, trucking and mobility.

- In 2019, Aeva announced a partnership with Audi's Autonomous Intelligent Driving entity. Aeva has also partnered with multiple other passenger car, trucking and mobility platforms to further adoption of ADAS and autonomous applications.

- Aeva is in a production partnership with ZF, one of the world's largest automotive Tier 1 manufacturers to top OEMs, to supply the first automotive grade 4D LiDAR from select ZF production plants. The partnership — Aeva's expertise in FMCW LiDAR technology combined with ZF's experience in industrialization of automotive grade sensors — represents a key commitment to accelerate mass production of safe and scalable 4D LiDAR technology.

With its powerful software stack, Aeva plans to bring its perception platform to a range of industries beyond automotive, including consumer electronics, consumer health, industrial robotics, and security.

Unlike legacy LiDAR, which relies on Time of Flight (ToF) technology and measures only depth and reflectivity, Aeva's groundbreaking solution uses a unique Frequency Modulated Continuous Wave (FMCW) technology to measure velocity in addition to depth, reflectivity and inertial motion. Aeva's innovative FMCW technology draws on significantly less power than other available technologies, including ToF, to bring perception to broad applications at an industry-leading cost.

"From the beginning our vision has been to create a fundamentally new sensing system to enable perception across all devices. This milestone accelerates our journey toward delivering the next paradigm in perception to mass market applications, not just in automotive but consumer and beyond," said Soroush Salehian, Co-founder and CEO at Aeva.

Mina Rezk, Co-founder and CTO at Aeva, said, "From the beginning, we believed that the only way to achieve the holy grail of LiDAR is to be integrated on a chip. Over the last four years, we did it by leveraging Aeva's unique coherent FMCW approach. With today's announcement, we can use our development efforts to expand into new markets that were simply not possible before."

Ahmed Fattouh, Chairman and Chief Executive Officer of InterPrivate said, "We look forward to our combination with Aeva, which was the clear stand-out amongst the 100+ merger targets we evaluated. The Company's breakthrough technology combines the key advantages of LiDAR, Radar, Motion Sensing, and Vision in a single compact chip. As a result of this transaction, including the upsized PIPE private placement, Aeva is not expected to require any additional funding to achieve significant cash flow through its commercial partnerships with world class customers. Soroush, Mina and their team are revolutionizing sensing solutions not

only for the automotive industry, but ultimately across all devices."

**Transaction Overview**

The combined company will have an implied pro forma equity value of approximately $2.1 billion at closing, and Aeva's existing stockholders will hold approximately 80% of the issued and outstanding shares of common stock of the combined company immediately following the closing.

Cash proceeds in connection with the transaction will be funded through a combination of (i) the issuance of approximately $120 million of common stock through a fully committed private placement at $10.00 per share, including investments from Adage Capital and Porsche SE, (ii) the issuance of $ 1.7 billion of new common stock of InterPrivate to current stockholders of Aeva subject to customary adjustments and (iii) $243 million of cash held in trust assuming no redemptions by InterPrivate's existing public stockholders.

The boards of directors of both InterPrivate and Aeva have unanimously approved the proposed business combination. Completion of the proposed business combination is subject to, among other things, the approval by InterPrivate and Aeva stockholders and the satisfaction or waiver of other customary closing conditions, including a registration statement being declared effective by the Securities and Exchange Commission (the "SEC"), and is expected to occur in the first quarter of 2021.

Following completion of the transaction, Aeva will retain its experienced management team. Soroush Salehian will continue to serve as Chief Executive Officer, Mina Rezk will continue to serve as Chief Technology Officer and Saurabh Sinha will continue to serve as Chief Financial Officer.

**Advisors**

Morgan Stanley & Co. LLC is serving as financial advisor and lead private placement agent on the PIPE offering, and Greenberg Traurig is serving as legal advisor to InterPrivate. Credit Suisse Securities (USA) LLC is acting as capital markets advisor, and Latham & Watkins LLP is serving as legal advisor to Aeva. Credit Suisse Securities (USA) LLC also served as placement agent on the PIPE offering for InterPrivate. Additionally, Davis Polk & Wardwell LLP is serving as legal counsel to Morgan Stanley & Co. LLC and Credit Suisse Securities (USA) LLC.

II.    **The Registration Statement Omits Material Information**

22.    On December 3, 2020, Defendants filed the materially incomplete and misleading

Registration Statement with the SEC. The Individual Defendants were obligated to carefully

review the Registration Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Merger.

      A.      <u>The Misleadingly Incomplete Information Regarding the Financial Advisors</u>

23.      The Registration Statement omits material information about the financial advisors, their relationships, and their roles in the events leading up to the Proposed Merger.

24.      First, the Registration Statement entirely omits the historical relationship between Morgan Stanley on the one hand, and the Company, the Individual Defendants, Aeva, or any affiliates thereof on the other, including all compensation received or expected to be received from any work performed. Indeed, the Registration Statement fails to disclose what role they played in the Proposed Merger, whether they provided any financing, or the amount of fees they received or expect to receive.

25.      Second, the Registration Statement states that Credit Suisse acted both as the financial advisor for Aeva and the advisor for the Company related to the PIPE Transaction, but the Registration Statement fails to state the compensation Credit Suisse received for acting as a financial advisor for either party, or the historical relationships between Credit Suisse on the one hand, and the Company, the Individual Defendants, Aeva, or any affiliates thereof on the other. It is important for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered when assessing how much credence to give its work or how much scrutiny to give the Proposed Merger. A reasonable shareholder would want to know

what important economic motivations that the advisor might have.

26. Additionally, Aeva's management prepared and provided financial projections to Credit Suisse for analysis in connection with the evaluation of the Proposed Merger. Furthermore, the Registration Statement references multiple instances where the valuation of Aeva and/or the combined company was discussed but fails to disclose any analyses performed by Credit Suisse in support of its views on the valuation of the Aeva business implied by the terms of the potential business combination and the potential benefits to stockholders of InterPrivate of such a transaction. Such information is plainly material to InterPrivate shareholders and strikes at the heart of the decision they are being asked to make regarding the Proposed Merger. The failure to include this material information in the Registration Statement renders the summary provided therein misleadingly incomplete.

B. <u>The Misleadingly Incomplete Financial Projections and Valuation Information</u>

27. The Registration Statement omits critical financial projections for Aeva, including Net Income projections and line-items underlying the free cash flow projections, both of which existed and were readily available to be disclosed (together the "Omitted Projections"). Defendants elected to summarize Aeva's financial projections, but they excised and failed to disclose the Omitted Projections. By disclosing certain projections in the Registration Statement and withholding the Omitted Projections, Defendants render the table of projections on page 112 of the Registration Statement materially incomplete and provide a misleading valuation picture of Aeva.

28. The Registration Statement failed to provide Net Income projections, which courts frequently consider to constitute material information. This is because Net Income is o one the most comparable metrics to those utilizing Generally Accepted Accounting Principles ("GAAP").

9

The inclusion of Net Income is therefore necessary for InterPrivate stockholders to ensure that the Exchange Ratio is premised on projections that were reasonably prepared. The failure to disclose Net Income also obfuscates the financial picture of both companies and provides a misleadingly incomplete representation of the projections tables and valuation analyses summarized in the Registration Statement. As Regulation S-K of the SEC explains, when disclosing revenue, it should be disclosed together with net income to prevent a misleading representation of corporate value:

> Although traditionally projections have been given for three financial items generally considered to be of primary importance to investors (revenues, net income (loss) and earnings (loss) per share), projection information need not necessarily be limited to these three items. However, management should take care to assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items. Revenues, net income (loss) and earnings (loss) per share usually are presented together in order to avoid any misleading inferences that may arise when the individual items reflect contradictory trends.

17 C.F.R. § 229.10(b)(1).

29. Likewise, the line-items underlying the cash flow projections are necessary for stockholders to ensure that the projections were reasonably prepared. In light of potentially significant differences between the Omitted Projections and the figures disclosed in the Registration Statement, the table of projections on page 112 of the Registration Statement is materially incomplete. By failing to include the Omitted Projections, the table provides a materially incomplete and misleading overall valuation picture of Aeva. Simply put, net income and line-items underlying the cash flow projections are irreplaceable when it comes to fully and fairly understanding a company's projections and value.

30. Unlike poker where a player must conceal his unexposed cards, the object of a Registration Statement is to put all one's cards on the table face-up. In this case only some of the

cards were exposed—the others were concealed. If a Registration Statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections provided to and relied upon by the Board but failed to disclose the Omitted Projections. This omission renders the summary of the projections table, Aeva's financial picture, and the recommendation of the Board provided in the Registration Statement misleadingly incomplete.

31. In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure. Absent disclosure of the foregoing material information prior to the forthcoming Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**COUNT I**

**Against All Defendants for Violations of Section 14(a) of the Exchange Act**

32. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any Registration Statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

34. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

35. The omission of information from a Registration Statement will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

36. Defendants have issued the Registration Statement with the intention of soliciting the Company's common shareholders' support for the Proposed Merger. Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things: (i) the financial advisors conflicts; and (ii) Aeva's financial projections and valuation.

37. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

38. The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Registration Statement states that the financial advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided them. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

39. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement.

40. InterPrivate is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

41. The misrepresentations and omissions in the Registration Statement are material and Plaintiff will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of InterPrivate's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of InterPrivate within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or knowledge of the misleadingly incomplete statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the material statements that Plaintiff contends are incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the

issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

46. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

### Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Registration Statement did not omit any material information or contain any materially misleading statements.

52. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Registration Statement to be disseminated to Plaintiff and the Company's other public shareholders.

53. The misrepresentations and omissions in the Registration Statement are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of InterPrivate shareholders to vote on the Proposed

Merger or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

      B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

      C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

      D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 20, 2021

**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*